******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

KIMBERLY MANGINELLI, CONSERVATOR (ESTATE
OF DARLENE MATEJEK), ET AL. *v.* REGENCY
HOUSE OF WALLINGFORD, INC., ET AL.
(SC 20767)
(SC 20768)

McDonald, D'Auria, Mullins, Ecker and Seeley, Js.

*Syllabus*

Pursuant to Executive Order No. 7V, § 6, which was issued by the governor on April 7, 2020, amid the COVID-19 pandemic, "any health care professional or health care facility shall be immune from suit for civil liability for any injury or death alleged to have been sustained because of the individual's or health care facility's acts or omissions undertaken in good faith while providing health care services in support of the [s]tate's COVID-19 response, including but not limited to acts or omissions undertaken because of a lack of resources, attributable to the COVID-19 pandemic, that renders the health care professional or health care facility unable to provide the level or manner of care that otherwise would have been required in the absence of the COVID-19 pandemic and which resulted in the damages at issue . . . ."

The plaintiff, individually and as administratrix of the estate of M, sought to recover damages from the defendants R Co. and N Co., which operate a nursing home, for the allegedly wrongful death of M. M was being cared for at the nursing home, where she required assistance for bed and wheelchair transfers. During a bed transfer on April 26, 2020, M fell. The nursing home staff placed M back in her bed but failed to immediately report her fall to her family and did not obtain medical treatment for M for two days. M eventually was treated and diagnosed with injuries that left her permanently disabled and that, according to the plaintiff, ultimately led to her demise. The plaintiff alleged that the defendants were negligent and reckless in their care and treatment of M in that they, among other things, failed to implement a plan of care for M prior to her fall, to report the fall when it occurred, to obtain immediate treatment, and to treat M's pain. The defendants filed a motion to dismiss the plaintiff's complaint, claiming that they were immune from suit and liability under Executive Order No. 7V, § 6. In opposing the motion, the plaintiff argued that M's injuries did not have any connection to a COVID-19 diagnosis or treatment. The trial court denied the defendants' motion to dismiss, concluding that the immunity conferred by the executive order applied only in cases involving the treatment of COVID-19 patients. The defendants appealed from the trial court's motion to dismiss, and, upon certification by the Chief Justice pursuant to statute (§ 52-265a) that a matter of substantial public interest was involved, the defendants filed a separate appeal with this court, claiming that the trial court incorrectly had determined that they were not immune from suit and liability under Executive Order No. 7V for their alleged acts and omissions and that the court, therefore, improperly denied their motion to dismiss.

*Held* that the trial court properly denied the defendants' motion to dismiss, as the defendants failed to establish the requisite connection between the alleged acts and omissions for which they sought immunity under Executive Order No. 7V and an alleged lack of resources attributable to the COVID-19 pandemic:

In the companion case of *Mills* v. *Hartford HealthCare Corp.* (347 Conn. 524), this court determined that the purpose of the immunity provision of Executive Order No. 7V, § 6, was to keep health care facilities open and operating during the pandemic in the face of overwhelming demand for medical care due to the emergence of COVID-19 by augmenting the state's health care workforce through the recruitment of health care professionals who had not previously maintained liability coverage, by facilitating the deployment of volunteers and out-of-state professionals, and by calling on health care professionals to perform services that

they otherwise would not ordinarily perform in the ordinary course of business, and, to encourage maximum participation, there was a compelling state interest in affording such medical professionals and facilities protection against liability for good faith actions in furtherance of the state's response to the COVID-19 pandemic.

In light of this underlying purpose, the court in *Mills* also determined that immunity applies under Executive Order No. 7V when the acts or omissions alleged to have caused the compensable injury were connected to the health care provider's services performed in support of the state's COVID-19 response, even if the provider was not specifically treating the patient for COVID-19, and, accordingly, the trial court's determination in the present case that the immunity afforded under Executive Order No. 7V applies only when the acts or omissions at issue involved the diagnosis or treatment of a COVID-19 patient was based on an overly narrow interpretation of that executive order.

This court determined that the plain and unambiguous language of the lack of resources clause in Executive Order No. 7V manifested an intent that, for immunity to apply, the health care provider must establish that there was a lack of resources attributable to the COVID-19 pandemic and that this lack of resources caused the acts and/or omissions for which the provider is seeking immunity.

In the present case, although the defendants offered evidence of a lack of specific resources that was caused by the COVID-19 pandemic, there was no evidence as to how the lack of resources specifically related to the defendants' alleged actions and omissions, for example, how the lack of resources led to the defendants' failure to implement a plan of care for M prior to her fall and to obtain treatment for M immediately after her fall.

Accordingly, an open factual dispute regarding the connection between the lack of resources and the alleged acts and omissions remained, and, therefore, the resolution of this critical factual dispute could not be decided on a motion to dismiss.

Argued April 27—officially released August 8, 2023*

*Procedural History*

Action to recover damages for, inter alia, the wrongful death of the named plaintiff's decedent as a result of the defendants' alleged medical malpractice, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Abrams, J.*, denied the defendants' motion to dismiss, and the defendants appealed to the Appellate Court; thereafter, upon certification by the Chief Justice pursuant to General Statutes § 52-265a that a matter of substantial public interest was involved, the defendants appealed to this court; subsequently, the appeal to the Appellate Court was transferred to this court, and the appeals were consolidated. *Affirmed.*

*Michael S. Taylor*, with whom were *Brendon P. Levesque* and, on the brief, *Cristin E. Sheehan, Christina Canales* and *Gina Hall*, for the appellants (defendants).

*Robert C. Lubus, Jr.*, with whom was *Andrew S. Marcucci*, for the appellees (plaintiffs).

*Joshua Perry*, solicitor general, with whom, on the brief, were *William Tong*, attorney general, and *Michael K. Skold*, deputy solicitor general, for the state of Connecticut as amicus curiae.

*Ryan K. Sullivan* and *Julianne Lombardo Klaassen* filed briefs for the Connecticut Trial Lawyers Associa-

tion as amicus curiae.

*Jennifer L. Cox* and *Jennifer A. Osowiecki* filed a brief for the Connecticut Hospital Association as amicus curiae.

*Bryan M. Killian* filed a brief for the United States Chamber of Commerce as amicus curiae.

*Keith M. Blumenstock, David J. Robertson* and *Jeannine M. Foran* filed a brief for Athena Health Care Associates, Inc., as amicus curiae.

*Angeline Ioannou* and *Timothy M. Gondek* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

D'AURIA, J. For approximately three and one-half years, the world has battled against the COVID-19 pandemic. As we explained in *Casey* v. *Lamont*, 338 Conn. 479, 258 A.3d 647 (2021), at the height of the pandemic, due to the highly contagious nature of COVID-19, "[a]round the country—indeed [around] the world—large segments of economic activity [had] been severely disrupted, if not fallen into collapse, millions of people [had] lost their employment, many hospitals and other health-care operations [had] been overrun by gravely ill and dying patients, and extraordinary lockdowns ordered by government officials, in an effort to abate the rate of infection . . . limited the free flow of personal and commercial activity." Id., 482. Addressing these issues, on March 10, 2020, Governor Ned Lamont issued a declaration of public health and civil preparedness emergencies, proclaiming a state of emergency throughout the state of Connecticut as a result of COVID-19. Then, on April 5, 2020, Governor Lamont issued Executive Order No. 7U, which he subsequently amended on April 7, 2020, by issuing Executive Order No. 7V, § 6, which provides, among other things, immunity from suit and liability to health care providers under certain circumstances relating to COVID-19.

In a companion case also decided today, we interpreted the scope of immunity afforded by Executive Order No. 7V as it related to acts or omissions undertaken in good faith by health care professionals and health care facilities while providing health care services in support of the state's COVID-19 effort. See *Mills* v. *Hartford HealthCare Corp.*, 347 Conn. 524,      A.3d      (2023). In the present public interest appeal certified under General Statutes § 52-265a, we must determine the scope of this immunity as it particularly relates to acts or omissions undertaken because of an alleged lack of resources attributable to the COVID-19 pandemic. On appeal to this court, the defendants, Regency House of Wallingford, Inc., and National Health Care Associates, Inc., claim that the trial court improperly denied their motion to dismiss the wrongful death claims filed by the plaintiff, Kimberly Manginelli, both in her individual capacity and as administratrix of the estate of Darlene Matejek.[1] Specifically, the defendants argue that the trial court incorrectly determined that they had failed to establish that the immunity provided by Executive Order No. 7V applied to the alleged acts and omissions at issue. According to the defendants, the trial court's error was premised on its overly narrow interpretation of the order as applying only when the alleged acts and/or omissions involved the diagnosis or treatment of COVID-19 patients. We agree with the defendants that the trial court too narrowly construed the language of the order but nevertheless hold that the defendants failed to establish that the immunity afforded by that

order applied in this case. Accordingly, on this record, we uphold the trial court's denial of their motion to dismiss.

The following facts, as alleged in the complaint or as established by uncontested evidence submitted in conjunction with the motion to dismiss, are relevant to this appeal. Regency House of Wallingford, Inc., operates a nursing home named Regency House of Wallingford Nursing and Rehabilitation Center (Regency House) with National Health Care Associates, Inc., providing guidance to Regency House regarding administrative functions. Beginning in 2014, Matejek lived at Regency House. The defendants' care plan for Matejek specified that she required assistance for bed and wheelchair transfers. On or about April 26, 2020, Matejek fell during a bed transfer. The defendants' staff at Regency House placed Matejek back into her bed, did not immediately report the fall to her family, and failed to treat her pain. The defendants' staff at Regency House also did not obtain medical treatment for Matejek for two days. Eventually, she was transported to a hospital, where physicians diagnosed Matejek with left and right femur fractures, which permanently disabled both of Matejek's legs. After receiving treatment for her fractured left and right femurs at the hospital, Matejek was returned to Regency House to undergo additional medical treatment and rehabilitative care, although the defendants' staff at Regency House failed to adequately provide the prescribed physical therapy. Her fall and the delay in treatment that followed also led Matejek to suffer a heart arrythmia, atrial fibrillation, severe anxiety and stress, and pain and suffering. The plaintiff alleges that, as a result of these injuries, Matejek died on December 29, 2020.

The plaintiff, both on behalf of Matejek as administratrix of her estate and in her individual capacity, in which she seeks damages for loss of consortium, filed a complaint against the defendants for Matejek's treatment at Regency House and death, alleging twelve counts of wrongful death under General Statutes § 52-555, based on medical negligence and medical recklessness. Specifically, the plaintiff alleged that the defendants were negligent and/or reckless in that they failed to obtain immediate medical treatment for Matejek's injuries, which required surgical intervention; failed initially to report the fall; failed to treat Matejek's pain; failed to obtain necessary medical treatment for two days; failed to implement the plan of care for Matejek prior to the fall; and failed to provide the physician-ordered physical therapy after Matejek returned to Regency House from the hospital.

The defendants moved to dismiss the complaint, claiming immunity from suit pursuant to Executive Order No. 7V on the ground that the order applied to "acts or omissions undertaken because of a lack of resources,

attributable to the COVID-19 pandemic, that renders the health care professional or health care facility unable to provide the level or manner of care that otherwise would have been required in the absence of the COVID-19 pandemic and which resulted in the damages at issue . . . ." In support of their motion to dismiss, the defendants submitted an affidavit from Donna Dwyer, the Director of Nursing at Regency House from May, 2017, to January, 2021, detailing the administrative challenges caused by the sudden appearance of the new virus. These obstacles included, but were not limited to, adapting to frequent changes in COVID-19 guidance, staff shortages due to virus exposure, shortages of personal protective equipment, increased phone call volume, the weakened condition of Regency House residents, and increased requests for nurse evaluations. Dwyer averred that, during the week of Matejek's fall, Regency House "was at the height of its first COVID-19 outbreak." Although Dwyer did not provide any details as to the actual treatment provided to Matejek, the defendants argued that they treated her while supporting the state's COVID-19 response, thus rendering them immune from liability under Executive Order No. 7V. The defendants reasoned that the governor intended the order to be far-reaching to ensure that health care workers did not fear legal repercussions when making good faith efforts to treat COVID-19 patients.

The plaintiff objected to the motion to dismiss, asserting that Matejek's injuries did not involve any connection to COVID-19 treatment, placing the defendants' activities outside of the protections of Executive Order No. 7V. The plaintiff acknowledged that Dwyer's affidavit broadly and accurately explained the defendants' COVID-19 protocols and the effects of the pandemic on Regency House but argued that the defendants had failed to provide the trial court with any evidence regarding how COVID-19 specifically impacted the care that Matejek received.[2] Further, the plaintiff reasoned that the defendants' proposed interpretation of Executive Order No. 7V would unreasonably shield health care actors from liability, regardless of whether the medical treatment in question was connected to the pandemic.

The trial court denied the motion to dismiss, citing the decision in *Mills* v. *Hartford HealthCare Corp.*, judicial district of Hartford, Docket No. CV-20-6134761-S (September 27, 2021) (*Budzik, J.*), as particularly persuasive for narrowly applying the scope of Executive Order No. 7V only to "instances involving the treatment of COVID-19 patients." The defendants then sought certification to appeal[3] pursuant to General Statutes § 52-265a and Practice Book § 83-1, which the Chief Justice granted.

On appeal, the defendants claim that the trial court incorrectly determined that they were not immune from

suit and liability under Executive Order No. 7V for their alleged acts and omissions and, therefore, improperly denied their motion to dismiss. The defendants argue that the trial court's narrow interpretation of Executive Order No. 7V as applying only to the diagnosis and treatment of COVID-19 patients conflicts with the explicit language and purpose of Executive Order No. 7V. More specifically, the defendants argue that the trial court's interpretation renders superfluous the "lack of resources" language in the executive order and adds a requirement—that the tort claimant have COVID-19— not found in the order. Instead, the defendants rely on the governor's various statements of intent,[4] which, according to the defendants, show that the purpose of Executive Order No. 7V was not to encourage the treatment of COVID-19 patients per se but to increase the state's available health resources to provide health care for all patients, regardless of whether they are being treated for COVID-19.

In response, and without any supporting citation,[5] the plaintiff contends that the purpose of Executive Order No. 7V was to encourage the mass participation of medical providers in Connecticut's health care facilities because the biggest obstacle to such participation in March, 2020, was the highly unknown nature of COVID-19, how it was transmitted, and how to diagnose and treat it. According to the plaintiff, this led health care providers to be concerned about facing litigation for the misdiagnosis or mistreatment of such an unknown disease. As a result, the plaintiff asserts, Executive Order No. 7V sought to solve this problem by granting immunity for the good faith diagnosis or treatment of COVID-19. The plaintiff asserts that the defendants offered no evidence to establish that the alleged acts or omissions had any direct relation to the diagnosis or treatment of COVID-19. Alternatively, the plaintiff argues, even if the order could be construed not to require a diagnosis and/or treatment directly related to COVID-19, when, as in the present case, the alleged acts or omissions are due to a "lack of resources" attributable to the pandemic, the defendants must demonstrate a nexus between the alleged acts or omissions and the "lack of resources," which, the plaintiff alleges, the defendants in the present case did not establish.

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 650, 974 A.2d 669 (2009).

When deciding a motion to dismiss for lack of subject

matter jurisdiction pursuant to Practice Book § 10-30 (a) (1), if, as here, "the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . the trial court . . . may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . [But] if the allegations of the complaint and the supplementary facts produced by the defendant do not conclusively establish that jurisdiction is lacking, the court must deny the motion to dismiss. Unless the resolution of the motion to dismiss has required the trial court to resolve factual disputes, our review of a trial court's ruling on a motion to dismiss is plenary." (Citations omitted; internal quotation marks omitted.) *Mills* v. *Hartford HealthCare Corp.*, supra, 347 Conn. 542–43.

In the present case, resolution of the defendants' claim requires us to construe the scope of the immunity Executive Order No. 7V conferred. In *Mills*, this court addressed the principles that govern the interpretation of executive orders: "[A]pplying the principles of statutory interpretation to [an] executive order is [appropriate] because [such an] order has the full force and effect of law . . . and, therefore, [we] apply the usual principles of statutory interpretation to our construction of Executive Order No. 7V."[6] (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 543–44.

Executive Order No. 7V, § 6, provides in relevant part: "Notwithstanding any provision of the Connecticut General Statutes or any other state law, including the common law, or any associated regulations, rules, policies, or procedures, any health care professional or health care facility shall be immune from suit for civil liability for any injury or death alleged to have been sustained because of the individual's or health care facility's acts or omissions undertaken in good faith while providing health care services in support of the [s]tate's COVID-19 response, *including but not limited to acts or omissions undertaken because of a lack of resources, attributable to the COVID-19 pandemic, that renders the health care professional or health care facility unable to provide the level or manner of care that otherwise would have been required in the absence of the COVID-19 pandemic and which resulted in the damages at issue*, provided that nothing in this order shall remove or limit any immunity conferred by any provision of the Connecticut General Statutes or other law." (Emphasis added.) At issue in the present case is the meaning of the "lack of resources" clause.

In interpreting the language at issue, we begin with this court's decision in *Mills*, which interpreted a different phrase of Executive Order No. 7V. Specifically, in *Mills*, the parties disputed the meaning of the phrase in Executive Order No. 7V, "any health care professional or health care facility shall be immune from suit for

civil liability for any injury or death alleged to have been sustained because of the individual's or health care facility's acts or omissions undertaken in good faith while providing health care services in support of the [s]tate's COVID-19 response . . . ." The plaintiff in *Mills* had argued in the trial court that the immunity afforded by Executive Order No. 7V applies to acts or omissions undertaken only while the defendants were actually providing health care services in support of the state's COVID-19 response and thus that the defendants were not immune from suit for acts or omissions they undertook while they were solely providing other health care services, i.e., those that were not in support of the state's COVID-19 response. *Mills* v. *Hartford Health-Care Corp.*, supra, 347 Conn. 539–40. The trial court agreed with the plaintiff and denied the defendants' motions to dismiss as to any claim not premised on the diagnosis or treatment of COVID-19. Id., 541.

On appeal, this court determined that the language of the immunity provision of Executive Order No. 7V was "reasonably susceptible to a range of reasonable interpretations. The narrowest interpretation would understand the phrase 'while providing health care services in support of the [s]tate's COVID-19 response' to mean that a health care provider is immune from suit and liability only for acts or omissions undertaken while treating the injured party for COVID-19. Under the broadest interpretation, the phrase reasonably could mean that a health care provider is immune from suit and liability for any acts or omissions undertaken during the period in which the health care provider is providing services in support of the state's COVID-19 response (i.e., while those services coincide with the effective period of the declared public health emergency), regardless of whether the acts or omissions are connected to those services. Between these two extremes, the phrase also reasonably could mean that immunity applies when the acts or omissions causing the injury were connected to the health care provider's services in support of the state's COVID-19 response, even if the health care provider was not treating the injured party for COVID-19." Id., 546.

In light of this ambiguity, this court in *Mills* considered as interpretive guidance the circumstances surrounding the executive order's promulgation and the public policy that it was designed to implement.[7] See id. Relying on these circumstances and public policy concerns, the court concluded that "[t]he evident purpose of the immunity provision of Executive Order No. 7V was to facilitate the implementation of these policies by assuring the relevant health care professionals and facilities that, in light of the uncertainties surrounding the diagnosis, treatment, and prevention of COVID-19, and in view of the compelling need to keep health care facilities open and operating, they would not be held liable for such acts and omissions, as long as they acted

in good faith and in support of the state's COVID-19 response." (Footnote omitted.) Id., 550.

In light of this underlying purpose, we rejected the plaintiff's interpretation of the executive order because it would fall far short of fulfilling the public policy underlying the order—namely, "to allow health care facilities to provide [health care services in support of the state's COVID-19 response] without the fear of being subjected to lawsuits." Id., 551. We also rejected the defendants' argument that the immunity provision of Executive Order No. 7V provides immunity for all actions and omissions undertaken by health care professionals and facilities during the period they were providing services in support of the state's COVID-19 response because such an interpretation would provide unintended relief to health care providers and facilities by exceeding the purpose of the executive order to provide immunity for acts or omissions that have no connection to COVID-19. Id. Rather, this court determined that the order's language meant that "immunity applies when the acts or omissions [alleged to have caused] the injury were connected to the health care provider's services in support of the state's COVID-19 response, even if the health care provider was not treating the injured party for COVID-19." Id., 546.

We also explained in *Mills* that other provisions of the order supported this interpretation because the language of the "lack of resources" clause "plainly requires the act or omission to have a connection to the COVID-19 pandemic for immunity to apply." Id., 554. This court reasoned that, "[i]f all a defendant has to do to establish immunity under that clause is prove that the pertinent act or omission occurred during the relevant period when it was providing COVID-19 support services, and is not required to establish that the act or omission was connected to the provision of those services, then the specific circumstances that fall within the 'including but not limited to [lack of resources]' clause would be rendered entirely superfluous. . . . The nature of or reason for the act or omission (a lack of resources or any other relevant reason) would not matter, only when it occurred." (Citation omitted.) Id.

Thus, we concluded in *Mills* that the plain language of the "including but not limited to [lack of resources]" clause of Executive Order No. 7V's immunity provision requires the acts and/or omissions at issue to have a connection to the COVID-19 pandemic for immunity to apply. But our decision in *Mills* did not require us to determine precisely the degree of connection between the acts and/or omissions at issue and the COVID-19 pandemic. The plain and unambiguous language of the "lack of resources" clause, however, manifests an intent that, for immunity to apply, the defendants must establish that (1) there was a lack of resources, absent an assertion of another relevant circumstance, attributable

to the COVID-19 pandemic, and (2) this lack of resources caused the acts and/or omissions at issue. Specifically, the phrase "attributable to the COVID-19 pandemic" directly modifies the phrase, "a lack of resources," as is evident by the placement of the commas and by the fact that this phrase cannot reasonably modify any other portion of the executive order. See *Indian Spring Land Co.* v. *Inland Wetlands & Watercourses Agency*, 322 Conn. 1, 16, 145 A.3d 851 (2016) (court may discern "plain meaning of statute on basis of 'grammatical structure of the statute' "). As a result, this language clearly requires the defendants to show that the COVID-19 pandemic caused a specific lack of resources. Additionally, the phrase, "because of a lack of resources," directly modifies the phrase, "acts or omissions undertaken" in Executive Order No. 7V; see *Connecticut Ins. Guaranty Assn.* v. *Drown*, 314 Conn. 161, 189, 101 A.3d 200 (2014) ("[i]t is well recognized that, whenever possible, a modifier should be placed next to the word it modifies" (internal quotation marks omitted)); with the phrase, "because of," denoting a causal relationship. See *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 787, 900 A.2d 18 (2006) (defining "because of" as "[o]n account of; by reason of" or "[f]or the reason that; since" (internal quotation marks omitted)); Webster's Third New International Dictionary (2002) p. 194 (defining "because" as "since . . . for the reason that . . . on account of the cause that—used to introduce dependent clauses"); see also *University of Texas Southwestern Medical Center* v. *Nassar*, 570 U.S. 338, 350, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) (defining "because of" as requiring but for cause); *Koch Foods, Inc.* v. *Secretary, United States Dept. of Labor*, 712 F.3d 476, 481 (11th Cir. 2013) ("[t]he word 'because' suggests a causal connection"). As a result, this language clearly requires the defendants to show that a specific lack of resources attributable to COVID-19 caused the acts and/or omissions at issue.

This level of specificity is in line with our interpretation of the executive order's "while providing health care services" clause in *Mills*. The public policy rationale for limiting immunity to acts or omissions connected to the health care provider's services in support of the state's COVID-19 response equally applies here based on the phrase, "including but not limited to," showing that the "lack of resources" clause is an example of a circumstance that would qualify for immunity under the "while providing health care services in support of the [s]tate's COVID-19 response" clause, and thus must be consistent. See *Anderson* v. *Pension & Retirement Board*, 167 Conn. 352, 355, 355 A.2d 283 (1974) ("the phrase 'including but not limited to' . . . contains words of illustration, not limitation"). Failing to require a connection between the specific lack of resources at issue and the acts and/or omissions alleged would provide relief to health care providers and facili-

ties unrelated to the purpose of the order. See *Mills* v. *Hartford HealthCare Corp.*, supra, 347 Conn. 551. However, requiring that the acts or omissions relate to the diagnosis or treatment of COVID-19 would undermine the governor's stated intent to provide protection to health care workers and facilities.[8] See id., 550. Rather, as with the "providing health care services" clause, to be entitled to immunity, a defendant must establish a direct connection between the alleged acts and/or omissions and the lack of resources at issue. See *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 828, 251 A.3d 56 (2020) ("[w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation" (internal quotation marks omitted)).

This interpretation of the "lack of resources" clause is consistent with the language of the immunity provision as a whole. Specifically, the clause at issue goes on to clarify that the alleged acts and/or omissions are caused by the lack of resources when the lack of resources "renders the health care professional or health care facility unable to provide the level or manner of care that otherwise would have been required in the absence of the COVID-19 pandemic . . . ." Executive Order No. 7V, § 6 (April 7, 2020). This language eliminates any possibility that the governor intended the immunity afforded by Executive Order No. 7V to apply only to the diagnosis and treatment of COVID-19 patients because, before the COVID-19 pandemic, there was no established level of care for COVID-19 patients, as there were no COVID-19 patients. This language then must refer to the standard of care that would have been applied to patients requiring non-COVID-19 health care prior to the pandemic, as compared to patients who, during the pandemic, also required non-COVID-19 health care.

Applying this interpretation of Executive Order No. 7V to the present case, we conclude that the trial court properly denied the defendants' motion to dismiss. Specifically, the defendants failed to establish that a particular lack of resources due to the COVID-19 pandemic caused the alleged acts and/or omissions. It is true that the defendants provided an affidavit by Dwyer to establish that the COVID-19 pandemic created vast difficulties for the defendants—staff shortages due to virus exposure, shortages of personal protective equipment, increased phone call volume, weakened condition of Regency House residents, and increased requests for nurse evaluations. Thus, the defendants offered evidence of a lack of specific resources and that the COVID-19 pandemic caused this lack of resources. But there is no evidence in the record about how the lack of these specific resources specifically related to the defendants' alleged actions and/or omissions that caused Matejek's injuries. For example, the defendants provided no evidence regarding how the lack of these resources led to

the defendants' failing to implement Matejek's health program, leading to her fall. They also supplied no evidence regarding how the lack of these resources related to the defendants' failure to provide Matejek treatment for two days.[9] Finally, the defendants advanced no evidence regarding how the lack of these resources connects to the defendants' alleged failure to provide Matejek with proper treatment after she left the hospital and returned to Regency House.

The defendants could have requested, but failed to request, an evidentiary hearing to prove these jurisdictional facts—namely, the connection between the specific lack of resources and the alleged acts and omissions regarding the defendants' care of Matejek. "[W]here a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Conboy* v. *State*, supra, 292 Conn. 652–54. Thus, when an open factual dispute remains on the record before the trial court, the court properly denies a motion to dismiss. See id., 654 ("we conclude that the trial court properly denied the state's motion to dismiss because, on the record before the court, an open factual dispute remained as to the motivations underlying the termination of the plaintiffs' employment").

Based on the record before the trial court in the present case, facts necessary to establish the immunity defense remained unproven: the connection between the alleged acts and omissions and the alleged lack of resources. Therefore, we conclude that, although the trial court incorrectly narrowed the scope of Executive Order No. 7V, it correctly denied the defendants' motion to dismiss.

The trial court's denial of the defendants' motion to dismiss is affirmed.

In this opinion the other justices concurred.

* August 8, 2023, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] We note that the case captions in the trial court, the Appellate Court and this court list Manginelli as the conservator of the decedent's estate. Subsequent to the decedent's death on December 29, 2020, the Probate Court on March 16, 2021, appointed Manginelli the administratrix of the decedent's estate. For simplicity, we refer in this opinion to Manginelli, in both her individual capacity and as administratrix of the decedent's estate, as the plaintiff.

[2] At no point did the defendants or the plaintiff move for a pretrial evidentiary hearing. See *Conboy* v. *State*, 292 Conn. 642, 650, 974 A.2d 669 (2009).

[3] The defendants also initially claimed that the opinion letter attached to the plaintiff's complaint, as required by General Statutes § 52-190a, did not provide sufficient information to determine the relevant qualifications of their health care provider, thus warranting dismissal of the complaint. The trial court ruled that this claim was moot after the plaintiff submitted an amended opinion letter.

[4] At the beginning of Executive Order No. 7V, the governor detailed the purpose of the order: "WHEREAS, on March 10, 2020, I issued a declaration of public health and civil preparedness emergencies, proclaiming a state of emergency throughout the [s]tate of Connecticut as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed spread in Connecticut; and . . . WHEREAS, COVID-19 is a respiratory disease that spreads easily from person to person and may result in serious illness or death; and . . . WHEREAS, the critical need to limit the spread of COVID-19 requires the enforcement of distancing and other protective measures in all workplaces; and . . . WHEREAS, there exists a compelling state interest in rapidly expanding the capacity of health care professionals and facilities to provide care during the COVID-19 pandemic; and WHEREAS, providing relief from liability for such health care professionals for good faith efforts to provide care during the COVID-19 pandemic will greatly increase the state's ability to achieve such an expansion . . . ."

[5] We presume that the plaintiff is relying on the following statement of intent by the governor in Executive Order No. 7V, which the defendants do not rely on: "WHEREAS, numerous medical professionals, after having completed the educational requirements for their profession, are permitted to temporarily practice their profession under the supervision of a licensed practitioner prior to being licensed; and WHEREAS, such professionals' ability to temporarily practice their profession may expire prior to the end of the public health and civil preparedness emergency; and WHEREAS, necessary public health protective measures enacted in response to the COVID-19 pandemic may prevent such professionals from completing their licensing requirements during the public health and civil preparedness emergency; and WHEREAS, to maintain and expand the healthcare workforce capacity for COVID-19 response and mitigation efforts, it is necessary to allow such professionals to continue to work in such temporary, supervised status for the duration of the declared civil preparedness and public health emergency . . . ."

[6] We note, however, as we did in *Mills*, that "[t]he Appellate Court . . . [previously] determined that the plain meaning rule set forth in General Statutes § 1-2z applied to its interpretation of an executive order. . . . We have some doubt about this conclusion, not only because § 1-2z on its face applies only to statutes, but also because the judicial interpretation of executive orders may involve different considerations than those implicated when we interpret legislation. We need not determine in the present case, however, whether construction of a clear and unambiguous executive order would be subject to the constraints imposed by § 1-2z . . . ." (Citation omitted.) *Mills* v. *Hartford HealthCare Corp.*, supra, 347 Conn. 543 n.12.

[7] "The circumstances existing at the beginning of the worldwide COVID-19 pandemic are well known. Although it was clear by early 2020 that COVID-19 was a dangerous and highly contagious disease, the mechanisms of the disease, its symptomatology, the methods by which the virus spread, and effective strategies for treatment, control, and prevention were all poorly understood. . . . It was widely believed in March, 2020, that medical providers and hospitals throughout the United States were about to be overwhelmed with COVID-19 patients. . . . Confronted with these circumstances, on March 10, 2020, Governor Lamont declared a public health emergency and a civil preparedness emergency throughout the state pursuant to General Statutes §§ 19a-131a and 28-9. . . . Governor Lamont formally declared that it was necessary to supplement Connecticut's health care workforce and the capacity of health care facilities to deliver [lifesaving] care by requesting the assistances of health care professionals who [had] not previously maintained liability coverage; facilitating the deployment of volunteer and out-of-state professionals; and calling [on health care] professionals to perform acts that they would not perform in the ordinary course of business . . . . Governor Lamont further determined that . . . to encourage maximum participation in efforts to expeditiously expand Connecticut's health care workforce and facilities capacity, there exists a compelling state interest in affording such professionals and facilities protection against liability for good faith actions taken in the course of their significant efforts to assist in the state's response to the current public health and civil preparedness emergency . . . ." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Mills* v. *Hartford HealthCare Corp.*, supra, 347 Conn. 546–50.

[8] The plaintiff argues that the plain language of the order as a whole supports her interpretation. Specifically, according to the plaintiff, the language, "while providing health care services in support of the [s]tate's

COVID-19 response," mandates a direct relationship between the treatment in question and COVID-19 before immunity can attach and that this limitation likewise applies to the "lack of resources" clause. We already have rejected this argument in *Mills*, however, as previously discussed.

[9] The result of this case may well have been different, for example, if, in her affidavit, Dwyer had averred that, when the decedent was hurt, the defendants' employees called all the local hospitals to discover if any had a free bed but were told that there were no open beds due to high volume of COVID cases, and that, because of this, the defendants' employees could not take the decedent to the hospital any sooner than they had done so.

———————————————————